JS 44 (Rev. 11/04)  **CIVIL COVER SHEET**  APPENDIX H

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

MALIK BOWERS

**DEFENDANTS**

DAVID D. DIGUGLIELMO, SUPERINTENDENT
DISTRICT ATTORNEY, COUNTY OF PHILADELPHIA
ATTORNEY GENERAL, PENNSYLVANIA

(b) County of Residence of First Listed Plaintiff  Montgomery
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)  Montgomery
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

See attachment.

Attorneys (If Known)

See attachment

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☒ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN  (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 2254
Brief description of cause:
Petition for Writ of Habeas Corpus

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)

JUDGE

DOCKET NUMBER

DATE  1/13/10

SIGNATURE OF ATTORNEY OF RECORD  Carole L. McHugh

FOR OFFICE USE ONLY

RECEIPT #  _____  AMOUNT  _____  APPLYING IFP  _____  JUDGE  _____  MAG. JUDGE  _____

JS 44 Reverse (Rev. 11/04)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.     Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.     Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# CIVIL COVER SHEET
# ATTACHMENT

**Attorneys for Petitioner:**

CAROLE L. McHUGH, ESQUIRE
410 Old York Road
Jenkintown, PA 19046-2809
215-887-5966 (voice)
215-887-4953 (fax)
carole.mchugh@comcast.net

BARNABY C. WITTELS, ESQUIRE
LaCheen, Wittels & Greenberg, LLP
1429 Walnut Street, Suite 1301
Philadelphia, PA 19102
215-735-5900 (voice)
215-561-1860 (fax)
barnabyw@aol.com

**Attorney for Respondents:**

THOMAS DOLGENOS, ESQUIRE
Chief, Federal Litigation Unit
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
215-686-5703 (voice)
215-563-0047 (fax)

**APPENDIX I**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| MALIK BOWERS,<br>        Petitioner<br>          v. | : <br> : <br> : <br> : | CIVIL ACTION |
| DAVID D. DIGUGLIELMO, ET AL.<br>      Respondents | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)  Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.          ( X )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( )

| | | |
|---|---|---|
| 1/13/10 | _Carole L. McHugh_ | Carole L. McHugh |
| **Date** | **Attorney-at-law** | **Attorney for** Petitioner |
| 215-887-5966 | 215-887-4953 | carole.mchugh@comcast.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _P.O. Box 244, Graterford, PA 19426-0244_

Address of Defendant: _P.O. Box 246, Graterford, PA 19426-0246_

Place of Accident, Incident or Transaction: _Philadelphia, Pennsylvania_
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))___   Yes☐  No☒

Does this case involve multidistrict litigation possibilities?   Yes☐  No☒
*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

| A. *Federal Question Cases:* | B. *Diversity Jurisdiction Cases:* |
|---|---|
| 1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts | 1. ☐ Insurance Contract and Other Contracts |
| 2. ☐ FELA | 2. ☐ Airplane Personal Injury |
| 3. ☐ Jones Act-Personal Injury | 3. ☐ Assault, Defamation |
| 4. ☐ Antitrust | 4. ☐ Marine Personal Injury |
| 5. ☐ Patent | 5. ☐ Motor Vehicle Personal Injury |
| 6. ☐ Labor-Management Relations | 6. ☐ Other Personal Injury (Please specify) |
| 7. ☐ Civil Rights | 7. ☐ Products Liability |
| 8. ☒ Habeas Corpus | 8. ☐ Products Liability — Asbestos |
| 9. ☐ Securities Act(s) Cases | 9. ☐ All other Diversity Cases |
| 10. ☐ Social Security Review Cases | (Please specify) |
| 11. ☐ All other Federal Question Cases (Please specify) | |

**ARBITRATION CERTIFICATION**
*(Check appropriate Category)*

I, _Carole L. McHugh_, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: _1/13/10_   _____   _19641_ (PA)
Attorney-at-Law   Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _1/13/10_   _____   _19641_ (PA)
Attorney-at-Law   Attorney I.D.#

CIV. 609 (4/03)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### FORM FOR USE IN APPLICATIONS FOR HABEAS CORPUS UNDER 28 U.S.C. § 2254
(eff. 12/1/04)

MALIK BOWERS _____ **PETITIONER**

(Full Name)   (Include name under which you were convicted)

vs.                Case No. _____

(Supplied by the Court)

DAVID D. DIGUGLIELMO, Superintendant, SCI Graterford ___ **RESPONDENT**

(Name of Warden, Superintendent, Jailor, or authorized person having custody of petitioner)

and

THE DISTRICT ATTORNEY OF THE COUNTY OF ___PHILADELPHIA___

and

THE ATTORNEY GENERAL OF THE STATE OF ___PENNSYLVANIA___

**ADDITIONAL RESPONDENT**

DV-7681

MALIK BOWERS _____

Name                                    Prison Number

State Correctional Institution at Graterford

Place of Confinement

(If petitioner is attacking a judgment which imposed a sentence to be served in the future, petitioner must fill in the name of the state where the judgment was entered. If petitioner has a sentence to be served in the future under a federal judgment which he wishes to attack, he should file a motion under 28 U.S.C. § 2255, in the federal court which entered the judgment.)

### PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

### INSTRUCTIONS–READ CAREFULLY

1. You must include all potential claims and supporting facts for which you might desire to seek review because a second or successive habeas corpus petition cannot be filed except under very specific and rare circumstances requiring certification by the Third Circuit Court of Appeals as set forth in instruction # 13.

2. Your habeas corpus petition must be filed within the 1-year statute of limitations time limit set forth in 28 U.S.C. §2244(d)(1). (There are limited circumstances in which the petition may be amended, within the one-year time period, to add additional claims or facts, see Federal Rules of

1

## Question 9(a) – Procedural History Leading to Direct Appeal *Nunc Pro Tunc*

The direct appeal which was decided on September 9, 2004 was the result of an order allowing the appeal to be taken *nunc pro tunc*. The history leading up to that order was as follows:

On January 6, 1998, trial counsel, Louis T. Savino, Jr. filed a notice of appeal to the Superior Court for Petitioner, 164 PHL 1998. He then petitioned to be relieved as counsel, and Edward C. Meehan, Jr., Esquire, was appointed in his stead. Mr. Meehan, however, failed to file a brief for appellant, and the appeal was dismissed on July 27, 1999. On or about November 19, 1999, Petitioner filed a PCRA petition seeking reinstatement of his direct appeal rights, and on April 12, 2000, relief was granted. On May 11, 2000, Petitioner, still represented by Mr. Meehan, filed a timely *nunc pro tunc* appeal, Superior Court No.1467 EDA 2000. Once again, however, Mr. Meehan failed to file a brief for appellant, and the appeal was dismissed on October 16, 2000. On or about March 6, 2001, Mr. Meehan filed another PCRA petition, again requesting reinstatement of Petitioner's direct appeal rights. Relief was again granted by order dated May 30, 2001, and yet another direct appeal was timely filed, *nunc pro tunc*, on June 25, 2001, and docketed at 1747 EDA 2001. In a surreal repetition of the previous appeals, this third appeal was once again dismissed for failure to file a brief for appellant, by order dated October 15, 2001.

Undeterred, Mr. Meehan filed yet another PCRA petition on October 9, 2002, again requesting reinstatement of Petitioner's direct appeal rights. This time, Judge Savitt appointed new counsel, Barbara Ann McDermott, Esquire, who filed an amended petition on May 22, 2003. On July 9, 2003, Judge Savitt restored Petitioner's direct appeal rights for the third time. A timely *nunc pro tunc* appeal, docketed at 2468 EDA 2003, was filed by Ms. McDermott on August 5, 2003 and eventually decided on September 9, 2004.

## Question 9(d), (e)(4) – grounds raised on direct appeal

Ms. McDermott raised the following questions for Petitioner on direct appeal to the Superior Court and in the subsequently filed Petition for Allowance of Appeal in the Supreme Court:

1. Whether it was reversible error for the trial court to permit evidence of Petitioner's possession and purchasing of firearms.

2. Whether it was reversible error for the trial court to refuse a motion for a mistrial following the prosecutor's reference in closing argument to the killing being an execution.

3. Whether it was reversible error for the trial court to refuse to instruct the jury that a person cannot be held culpable for first degree murder as an accomplice or conspirator unless that person had the specific intent to kill.

4. Whether the evidence was sufficient to sustain the guilty verdicts.

1 (reverse)

Civil Procedure 15; or amended after the one-year period expires, in order to clarify or amplify claims which were timely presented, see United States v. Thomas, 221 F. 3d 430 (3d Cir.2000.)

3. Any false statement of a material fact in your petition, in a motion for leave to proceed in forma pauperis, or in any other motion you file in this case may serve as the basis for prosecution and conviction for perjury.

4. This petition must be typewritten, printed, or legibly handwritten and signed by you as the petitioner or by your representative on Page 11. You should answer all questions concisely in the proper space of the petition. If you need more room to answer any question, you may write on the reverse blank sides of the petition.

5. You may not attach additional pages to the petition. You do not have to list or cite the cases or law that you are relying on. If you do want to cite the cases and law you are relying on and make legal arguments, you should do so in a separate concise brief or memorandum which should be filed along with the petition.

6. When you file your petition, you must include a filing fee of $5.00. If you cannot pay the full filing fee, you must request permission to proceed in forma pauperis as explained in instruction # 8.

7. Your petition will be filed if you have followed these instructions and it is in proper order.

8. To request permission to proceed in forma pauperis without paying the full filing fee, you must completely fill out pages 12 through 18 of the petition. You should answer all questions and sign where indicated on Pages 12 and 18. You should see to it that an authorized prison official completes the certification on Page 19. You must prove that you cannot pay the full filing fee and other costs because of poverty and a discharge in bankruptcy will not excuse you from this requirement. The Court will let you know if you may proceed in forma pauperis.

9. Only final judgments entered by one state court may be challenged in a single petition. If you seek to challenge judgments entered by different courts either in the same state or in different states, you must file separate petitions as to each court.

10. As required by 28 U.S.C. § 2254(b)(1), you must have exhausted all claims that you are making in your petition. This means that every claim must have been presented to each level of the state courts. If you file a petition that contains claims that are not exhausted, the federal court will dismiss your petition. 28 U.S.C. § 2254(b)(2) provides that if it is perfectly clear that no colorable claims are presented, the federal court can also deny your petition on the merits.

11. As required by 28 U.S.C. § 2254(e)(1), a federal court, when considering your habeas corpus petition, must deem as correct a determination of fact made by a state court unless you rebut the presumption of correctness by clear and convincing evidence. Under 28 U.S.C. § 2254(e)(2), if

2

5. Whether the verdicts were against the weight of the evidence.

## Question 11(a)(3) – Grounds Raised in PCRA Proceeding

1. Whether the Commonwealth misrepresented and suppressed material evidence concerning the decedent Andrew Haynes and witnesses Aloysius Hall and Tracena Copper, and committed other related prosecutorial misconduct during the questioning of Tracena Copper, in violation of due process under Fourteenth Amendment to the Constitution of the United States and under Article I, Section 9 of the Pennsylvania Constitution.

2. Whether trial and direct appeal counsel rendered ineffective assistance by failing to investigate, discover and use any available facts concerning Andrew Haynes' criminal history, Aloysius Hall's criminal history, and Tracena Copper's cooperation with governmental authorities prosecuting Petitioner, by failing to request a continuance after learning of Copper's involvement in the federal proceeding, and by failing to raise where appropriate at trial, post-trial, or on appeal the prosecutorial misconduct claims asserted in the previous issue.

3. Whether trial counsel rendered ineffective assistance by failing to have former testimony of unavailable witness Felicia Brokenbrough read to the jury as important impeachment of the Commonwealth's time-line and Rasheema Washington's story, and by failing to impeach witnesses Hall, Duncan, Washington and Selvan Haynes, by reference to their former testimony and statements.

4. Whether trial and direct appeal counsel rendered ineffective assistance by failing to object to the prosecution's use of its peremptory strikes, make a full record in support of that objection, and otherwise pursue Petitioner's claim of racially motivated jury selection under Batson v. Kentucky, and the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and under Article I, Sections 1, 6, 9, and 26 of the Pennsylvania Constitution.

5. Whether trial and direct appeal counsel were ineffective for failing to (a) correctly and adequately raise and argue Petitioner's claim that the court's jury charge effectively relieved the prosecution of its burden of proving specific intent in the case of accomplice and co-conspirator liability for first degree murder, and (b) object to the prosecutor's arguments which were based upon the same fundamental constitutional error.

6. Whether trial and direct appeal counsel were ineffective for failing to make and/or properly support arguments against admission of testimony connecting Petitioner to a certain nine millimeter weapon.

7. Whether there was insufficient evidence to support a finding of guilt of first degree murder beyond a reasonable doubt, and whether direct appeal counsel was ineffective for inadequately arguing the issue, for failing to preserve the issue as a matter of federal due process, and for failing to properly seek review of the Superior Court's failure to decide the matter as to

2 (reverse)

you have failed to develop the factual basis of a claim in state court proceedings, a federal court cannot hold an evidentiary hearing on that claim unless you show that:

> (i) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the U.S. Supreme Court, that was previously unavailable, or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence.
>
> You must also show that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found you guilty of the offense in question.

12. As required by 28 U.S.C. § 2244(b)(1), a federal court must dismiss any claim in a second or successive habeas corpus petition that *was* presented in a prior habeas corpus petition.

13. As required by 28 U.S.C. § 2244(b)(2), a federal court must dismiss any claim in a second or successive habeas corpus petition that *was not* presented in a prior habeas corpus petition unless you show:

> (A) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the U.S. Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence, and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found you guilty of the offense in question.
>
> Before such a second or successive petition may be filed in the district court, however, the petitioner must move the court of appeals for an Order authorizing the district court to consider the petition. Petitioner's motion for such an Order must be determined by a three judge panel of the court of appeals, which must grant or deny the motion within 30 days. The court of appeals may grant the motion only if it determines that the petition makes a prima facie showing that it satisfies either (A) or (B) above.

14. 28 U.S.C. § 2254(i) provides that ineffectiveness of counsel during post-conviction, habeas corpus and P.C.R.A. proceedings in state or federal court may not be grounds for relief in your petition.

15. When the petition is fully completed, the **original and four copies** must be mailed to the **Clerk of the United States District Court, Room 2609, 601 Market Street, Philadelphia, PA 19106.** You must return all pages, including these instructions.

*petitioner*, as opposed to his co-defendant Rasheed Simpson.

8. Whether the cumulative prejudice from the foregoing constitutional violations was sufficient to require that Petitioner be granted a new trial.

## Question 12 (A)-(I) – Grounds 1-9

### (A)   Ground One:

**Petitioner was deprived of due process of law under the Fifth and Fourteenth Amendments   by the trial court's charge (and similar statements by the prosecution), pursuant to which it was reasonably likely that the jury believed that proof of a specific intent to kill on Petitioner's part was not necessary to convict Petitioner of first degree murder as accomplice or co-conspirator.**

To achieve a first degree murder conviction under Pennsylvania law, the Commonwealth must prove beyond a reasonable doubt that *the specific defendant who is convicted must have himself had the specific intent to kill the victim;* it is *not* sufficient that one of the defendant's accomplices or co-conspirators had that specific intent. Although the court did inform the jury several times that the Commonwealth had the burden of proving a particular defendant individually guilty of specific intent, those instructions were vitiated by a number of confusing uses of the plural,[1] as well as serious ambiguity in the definitions of accomplice and co-conspirator liability. For example, the jurors were instructed generally that they could find defendants guilty "of certain crimes without finding that they personally engaged in the conduct required for the commission of those crimes," and then instructed further using the plural construction "these crimes" See N.T. 12/16/97, pp. 33-36. Without further elucidation, this instruction was likely interpreted to create an exception to the usual requirement of a personal "specific intent" to kill. The confusion was magnified by the fact that in the separate instruction on the crime of criminal conspiracy, the court indicated *two interchangeable possible predicate acts*, that is, *robbing and/or shooting* the decedent. Id., pp. 28-29.

Thus, the trial court's instructions relied on the jurors to take the separate first-degree murder instructions, with the admonition that the guilt of each of the defendants must be considered separately – and use them to *amend* the conspiracy instruction and co-conspirator liability instructions given, *which permitted as a general rule the transfer of intention from one defendant to the other so long as the defendants were found to have conspired to commit **either** murder **or** robbery.* There is no reason in logic or in law to conclude that the jurors were capable of making that amendment, felt free to make that amendment, or did in fact make that amendment. Accordingly, the instructions as given were constitutionally infirm.

Nor was the error harmless. A number of witnesses testified to the involvement of Petitioner's co-defendant Rasheed Simpson in making ransom demands, and to Allister Durrante's

---

[1]      See generally, N.T. 12/16/97, pp. 6-7, 14-15, 22, 32,  55, 79-81, 87, 89.

3 (reverse)

## PETITION

1. (a)  Name and location of court which entered the judgment of conviction under attack:_____
Court of Common Pleas of Philadelphia County, Pennsylvania
_____

   (b)  Name of Prosecutor:___Assistant District Attorney William Fisher, Esq.

   (c)  Prosecution conducted by District Attorney's Office of ___Philadelphia_____
County

2. (a)  Date of Judgment of conviction: __conviction 12/17/97; sentence 12/22/97__

   (b)  Indictment number or numbers:__CP-51-CR-1103162-1996__

   Term:_November, 1996___   Criminal Case Number:___0316_____

3. Length of sentence:__Life*_____   Sentencing Judge:__Hon. David N. Savitt__

4. Nature of offense or offenses for which you were convicted: __first degree murder,__
__robbery, kidnapping, criminal conspiracy, possession of instrument__

__of crime__

5. What was your plea?  (Check one)
   (a) Not guilty ( X )  (b) Guilty ( )   (c) Nolo contendere ( )

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
indictment, give details:_____

   _____

   _____

6. If you pleaded not guilty, what kind of trial?: (Check one)   (a) Jury ( X )   (b) Judge only ( )

7. Did you testify at the trial?  Yes ( )  No ( X )

8. Did you appeal from the judgment of conviction?   Yes ( X )  No ( )

9. If you did appeal, answer the following:

4

* Also 10-20 years for robbery, 10-20 years for kidnapping, 5-10
years for conspiracy and 2½ -5 years for possession of an instru-
ment of crime -- all to run consecutively to each other but con-
currently with the life sentence for murder.

appearance on the decedent's doorstep as a precipitating event to the eventual abduction. However, *only Rasheema Washington* directly connected *Petitioner* to the kidnapping. Furthermore, unlike the testimony of Stanley Hall and Clayton Duncan regarding Simpson's personally delivered threat to kill Haynes if money was not forthcoming, not one word of similar import was attributed to Petitioner, *even by Washington.* Indeed, Washington's account, even if believed, would be equally consistent with an intent to participate in kidnapping and robbery short of murder. See generally, N.T. 12/12/97, pp. 10-18, 41-50, 69-71, 97-101. Given this paucity of evidence, therefore, the inaccuracy of the Court's instructions on co-conspirator liability was of critical importance.

The prejudicial effect was augmented, moreover, by the arguments made by the prosecutor during his closing speech which, like the charge of the Court, confused and mixed together the evidence concerning Rasheed Simpson's specific intent to kill, with principles of accomplice and co-conspirator liability, using catch phrases such as "in for a penny, in for a pound" and otherwise indicating that it was irrelevant whether Petitioner agreed to commit a robbery or agreed to commit a murder, and inviting the jury to impute Simpson's intentions to petitioner. See, e.g., N.T. 12/15/97, pp. 123-125, 137-138, 164-165.

**(B)     Ground Two:**

**Trial and direct appeal counsel rendered ineffective assistance under the Fifth, Sixth and Fourteenth Amendments by failing to (a) correctly and adequately raise and argue Petitioner's claim that the court's jury charge effectively relieved the prosecution of its burden of proving specific intent in the case of accomplice and co-conspirator liability for first degree murder, and (b) object to the prosecutor's arguments which were based upon the same fundamental constitutional error.**

Both defense counsel unequivocally objected to the trial court's failure to specifically tell the jury that a defendant may not be convicted of first degree murder on an accomplice liability theory unless he personally shares the specific intent to kill. It is not clear from the colloquy, however, whether an objection to the co-conspirator part of the charge was also understood. See N.T. 12/15/97, pp. 58-62. To the extent that counsel's objection may have been insufficient under Pa.R.A.P. 302(b), counsel was clearly ineffective, since the Pennsylvania Supreme Court's opinion in Commonwealth v. Huffman, 536 Pa. 196, 199, 638 A.2d 961, 962 (1994) had by the time of Petitioner's trial very clearly cautioned charging courts to add additional explanations to the general co-conspirator liability instruction in cases involving first degree murder. Similarly ineffective was the failure to object to the portions of the prosecutor's closing argument described above, inviting decision on the same improper basis. Nor was there any possible strategic reason for the omission, which, as has been argued in Part (A) above, was highly prejudicial.

Direct appeal counsel, similarly, argued Petitioner's jury charge issue in a neglectful and cursory manner. The relevant instructions were never so much as quoted, for example, and the offending, misleading portions were never specifically identified. Furthermore, in a truly stunning

4 (reverse)

(a) Name of court: Superior Court of Pennsylvania, 2468 EDA 2003.

(b) Result: judgment of sentence affirmed    (see also page 1 reverse)

(c) Date of result and citation, if known: 9/9/04, 863 A.2d 1219 (table)

(d) Grounds raised: See pages 1-2 (reverse)

_____

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court: Pennsylvania Supreme Court    498 EAL 2004

(2) Result: petition for allowance of appeal denied

(3) Date of result and citation, if known: 6/1/05, 876 A.2d 392 (table)

(4) Grounds raised: See pages 1-2 (reverse)

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court: N/A

(2) Result: _____

(3) Date of result and citation, if known: _____

(4) Grounds raised: _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?   Yes (x) No ( ) see previous answer to #9(a) on page 2 (reverse) as well as the following:

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of Court: Court of Common Pleas, Philadelphia County

(2) Nature of proceeding: petition for post conviction collateral

relief

_____

5

display of inattention and one-size-fits-all form-briefing, direct appeal counsel string-cited to the Pennsylvania Supreme Court's decision in co-defendant Simpson's appeal – which dealt with portions of the very same jury instructions at issue here – without any acknowledgment of the connection to Petitioner's case at all. See Brief for Appellant, 3/15/04 (PCRA Petition Exhibit A), p. 16. Even after the Superior Court rejected Petitioner's appeal based solely on the Simpson decision (Superior Court Memorandum, 9/9/04 (PCRA Petition, Exhibit B, pp. 5-6), counsel *still* made no effort to distinguish that decision. See Petition for Allowance of Appeal, 10/8/04 (Exhibit C to the PCRA petition), pp. 12-16. Since the arguments this Petitioner was attempting on appeal went *beyond* the argument addressed in Simpson, competent counsel would have pointed out that while the Supreme Court in Simpson examined the first degree murder charge and the accomplice/co-conspirator charges, it does not appear that the Court's attention was drawn to the fact that when charging the jury concerning the *crime* of criminal conspiracy, the trial court's instructions were couched in terms allowing conviction for *either* a conspiracy to rob *or* a conspiracy to murder. See Commonwealth v. Simpson, 562 Pa.255, 273-279, 754 A.2d 1264, 1273-1276 (2000). The Supreme Court, therefore, had no occasion to consider the effects of this confusing definition upon the instructions given for co-conspirator liability generally, and how the combination would be viewed by a jury considering a first degree murder charge on a co-conspirator theory. Nor did it, obviously, consider the potential effects of the instruction upon Petitioner specifically, who was not directly implicated in any death threats towards the decedent. Therefore, had the Simpson decision been faced directly, and had Petitioner's argument been made correctly, there would have been a very real chance of meriting separate consideration by both the Superior and Supreme Courts.

Direct appeal counsel also, ineffectively, failed to include any citation to federal precedent on the issue at all, including but not limited to the decision of the Third Circuit Court of Appeals in Smith v. Horn, 120 F.3d 400, 415 (3d Cir. 1997), in which jury instructions strikingly similar to those in Petitioner's case were held to violate due process, in a reasoned opinion squarely based upon United States Supreme Court cases.

For all these reasons, therefore, direct appeal counsel, like trial counsel, rendered seriously ineffective service.

**(C)    Ground Three:**

**Trial counsel rendered ineffective assistance by failing to have the former testimony of unavailable witness Felicia Brokenbrough read to the jury to impeach the Commonwealth's time-line and Rasheema Washington's story, and by failing to impeach witnesses Hall, Duncan, Washington and Selvan Haynes by reference to their former testimony and statements.**

In Petitioner's case, trial counsel failed to utilize important impeachment material which would have demonstrated the damaging fact that that all the Commonwealth's witnesses from the earlier trial of Petitioner's alleged co-conspirator Allister Durante had made a coordinated and mutually consistent alteration in their testimonies for Petitioner's trial – dramatically changing the

5 (reverse)

(3) Grounds raised: See pages 2-3 (reverse) .

(4) Did you receive an evidentiary hearing on your petition, application or motion?
  Yes ( )  No (X)

(5) Result:  relief denied

(6) Date of result:  8/20/08

(7) Did you appeal the result to a higher court?     Yes (x)  No ( )

Court Name(s)  Superior Court of Pennsylvania, 2307 EDA 2008

Result(s) appeal is still pending

Result Date(s)  appeal is still pending

(b) As to any second petition, application or motion give the same information:

(1) Name of Court: _____

(2) Nature of proceeding: _____

(3) Grounds raised: _____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
  . Yes ( )  No ( )

(5) Result: _____

6

alleged time of the events so as to accommodate the tale told by a new witness, Rasheema Washington, *who was the only witness to implicate Petitioner in the kidnapping.* Had counsel demonstrated this suspiciously coordinated shift in testimony to the jury, it is extremely likely that the credibility of the entire prosecution would have been destroyed – and particularly as to Petitioner, against whom Rasheema Washington was the only direct witness.

This could have been done, first of all, by having the former testimony of witness Felicia Brokenbrough read to the jury, in light of her subsequent unavailability for Petitioner's trial. Contrast, e.g., Brokenbrough's testimony at the Durrante trial – N.T. 10/5/95 (PCRA Petition Exhibit U), p. 17 (abduction took place well after 10:00 or 10:30 pm) – with Clayton Duncan's hearsay testimony as to Brokenbrough's excited utterances immediately after the abduction, considerably earlier in the evening – N.T. 12/10/97, pp. 46-53– with Washington's story which would have required about an hour and a half between the initial abduction and the actual killing – N.T. 12/12/97, pp. 43-45, 97 – which killing undeniably took place before the 11:10 pm according to 911 records – Telephone and Radio Transmittal Log, 12/8/93 (PCRA Petition Exhibit N). Compare also N.T. 12/10/97, pp. 46-52 (Duncan's time-line at Petitioner's trial, involving an initial contact by Durrante at 9:00 p.m., followed by brief conversation, shower, 5 minutes listening to music and 15 minutes of television before Brokenbrough rang the doorbell to report the abduction) and N.T. 12/11/97, pp. 16-18, 40, 44 (Hall's testimony at Petitioner's trial placing Durrante's first knock at 8:45 p.m. and the first ransom call after the abduction at 9:45 p.m.) with N.T. 10/3/95 (PCRA Exhibit O), pp. 6-10, 26-28 (Duncan's testimony at Durrante's trial that it was already 10:00 pm before Durrante first came to the apartment door) and N.T. 10/3/95 (PCRA Exhibit T), p. 92 (Selvan Haynes' testimony at Durrante's trial placing the call from Hall about his brother's abduction sometime *after 10:00 p.m.).*

Given all the above, counsel was clearly ineffective in failing to apprise the jury of the former testimony of these witnesses – all consistently placing the abduction well after 10:00 or 10:30 p.m., which would not have left time for the occurrence of any of the events implicating Petitioner which were supposedly witnessed by Washington.

Each of these witnesses was, moreover, subject to impeachment related to other details of their stories. For example, Washington's description of a full half hour of vicious beating and kicking was belied by the actual condition of the victim's body, which revealed nothing more than a scrape on the leg. See N.T. 12/11/97, pp. 159, 162, 166. Her preliminary hearing testimony and statements to police were at odds with her trial testimony over such matters as timing, whether weapons were in evidence, what she was actually in a position to see, and how Petitioner was able to gain access to her apartment. Compare Statement of Rasheema Washington, 6/17/96 (PCRA Exhibit W) and N.T. 11/7/96 (Preliminary Hearing, PCRA Exhibit X), pp. 5-6, 8, 16, 19 with N.T. 12/12/97, pp. 10-16, 27, 41-45, 49-50, 70-71.

Duncan's testimony was similarly variable from direct examination to cross examination and from trial to trial, resulting in four different stories about the timing and order of events, and where he was at different times during the evening. Compare N.T. 12/10/97, pp. 44-60, 72-73 with id., pp.

6 (reverse)

(6) Date of result:_____

(7) Did you appeal the result to a higher court?     Yes ( )   No ( )

Court Name(s)_____

Result(s)_____

Result Date(s)_____

(c) As to any <u>third petition</u>, application or motion give the same information:

    (1) Name of Court:_____

    (2) Nature of proceeding:_____

    _____

    (3) Grounds raised:_____

    _____

    _____

    (4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ( )   No ( )

    (5) Result:_____

    _____

    _____

    (6) Date of result:_____

    (7) Did you appeal the result to a higher court?     Yes ( )   No ( )

Court Name(s)_____

Result(s)_____

Result Date(s)_____

7

57-59, 69, with N.T. 10/3/95 (PCRA Exhibit O), pp. 6-10, 26-28, 31-32, with id., pp. 30-33, 40-42. Aloysius ("Stanley") Hall was also the author of a series of different stories about where he and Duncan were at the time of Durrante's visit, what he did and did not see, what Brokenbrough allegedly told him and the number of ransom calls that were received. See N.T. 12/11/97, pp. 15-23, 33-36, 40-58, 62-66, 80, 84-87; Statement of Aloysius Hall (PCRA Exhibit P), N.T. 11/7/96 (Preliminary Hearing, PCRA Exhibit Q, pp. 41-46; N.T. 10/3/95 (PCRA Exhibit R), pp. 58-61, 74-76. Even the decedent's brother, Selvan Haynes, made markedly divergent statements about the timing of events and the number, location and content of the alleged ransom calls. See N.T. 12/11/97, pp. 70-89; Statement of Selvan Haynes (PCRA Exhibit S), pp. 1-3; N.T. 10/3/95 (PCRA Exhibit T), pp. 92-106.

None of these opportunities for effective cross examination of these important prosecution witnesses were used. The mere recitation of their pervasive inconsistencies – from day to day as well as from witness to witness – would clearly have had significant potential for convincing the jury that the Commonwealth's case was a made-up patchwork of opportunistic lies – and, therefore, for a judgment of acquittal. The failure to pursue this potential, and in particular the potential for discrediting Rasheema Washington's story, was neglectful, ineffective, devoid of any strategic purpose and highly prejudicial.

## (D)    Ground Four:

**Petitioner was deprived of due process of law by virtue of his conviction of first degree murder upon evidence which was legally insufficient to provide proof beyond a reasonable doubt that he specifically intended to kill the decedent.**

As previously stated, it is necessary for a first degree murder conviction, to establish that the defendant *specifically* intended to kill.

The evidence against Petitioner fell into two categories. First of all, there was some evidence suggesting that he possessed a certain 9 millimeter gun weeks prior to Haynes killing, and possibly again eight days after the killing. See ## 7-8 below. Secondly, Rasheema Washington testified that Petitioner and four others including Rasheed Simpson, and Allister Durrante, brought Haynes to her apartment, bound hand and foot, where he was kicked and beaten and subjected to repeated demands for money, until finally, a half hour later, at her request, they all left again. N.T. 12/12/97, pp. 9-10, 13-17, 38-39, 42-46, 49-50, 69, 97-101. Notably, Washington did *not* implicate Petitioner in any of the ransom calls or threats to kill Haynes. N.T. 12/12/97, pp. 17, 69, 99-101. According to Hall, moreover, the caller was always Simpson. N.T. 12/11/97, p. 33. Accordingly, every act attributable to Petitioner from any of the testimony anywhere in the trial is just as consistent with a limited intent to perpetrate a kidnapping, as with the claimed conspiracy to murder. The unavoidable conclusion, therefore, is that the Commonwealth failed to establish beyond a reasonable that Petitioner was an accomplice or co-conspirator to murder in the first degree, and the conviction is deficient as a matter of due process.

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Give specific facts supporting each ground.

*CAUTION*: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies, you should set them forth in this petition if you wish to seek federal relief. If you fail to set forth all such grounds in this petition, you may be barred from presenting them at a later date.

For information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted all your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure, (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim).

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest, (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim).

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

8

**E.    Ground five**

> **Direct appeal counsel was ineffective for inadequately arguing the due process/insufficiency issue as a matter of Pennsylvania law and constitutional due process, and for failing to properly seek review of the Superior Court's failure to decide the matter as to *Petitioner*, as opposed to his co-defendant Rasheed Simpson.**

Although direct appeal counsel did raise the issue of the sufficiency of the evidence, she failed to directly cite any federal constitutional precedents, such as Jackson v. Virginia, 443 U.S. 307, 324 (1979), for example. See Brief for Appellant (PCRA Exhibit A), pp. 20-22; Petition for Allowance of Appeal (PCRA Exhibit C), pp. 16-18.  Indeed, counsel's argument was insufficient even as a matter of state law, containing not a single citation to the actual record, and without any close analysis of the evidence, or lack of evidence, relating to Petitioner in particular.  Id.  Quite possibly as a result of this, a panel of the Superior Court  decided Petitioner's sufficiency of the evidence issue *based on what the Supreme Court had held about the sufficiency of the evidence as to Petitioner's co-defendant Rasheed Simpson.*  See Appendix A hereto, p. 6.

This exclusive reliance upon the sufficiency determination undertaken in the Simpson case was, unfortunately, itself a violation of the principles analyzed in #1 above, which require that each defendant's guilt or innocence of first degree murder be considered *independently* of the guilt or innocence of the co-defendant.  Furthermore, this violation was *especially* wrong and prejudicial in this case, because there *was* evidence from more than one witness that Rasheed Simpson – unlike Malik Bowers – specifically threatened to kill Mr. Haynes. Accordingly, the Supreme Court's determination that there was sufficient evidence to convict *Simpson* of "willingly and consciously participating in the killing of the victim" had absolutely *no* relevance to the question presented in *this* Petitioner's appeal, which is whether or not there was sufficient evidence of intent to kill on the part of *this* Petitioner, Malik Bowers.

Nevertheless, direct appeal counsel failed to point out the error in the Superior Court's analysis in her subsequently filed petition for allowance of appeal to the Pennsylvania Supreme Court – in which she merely cut-and-pasted her original, inadequate argument.  Once having chosen to argue a valid and meritorious due process claim, stemming from the lack of sufficient evidence, there could have been no strategic purpose to arguing it in an ineffective manner.  The prejudice, moreover, is clear, going to the very heart of the conviction.

**(F)    Ground 6:**

> **Trial and direct appeal counsel rendered ineffective assistance by failing to object  to the prosecution's use of its peremptory strikes, make a full record in support of that objection, or otherwise pursue Petitioner's claim of racially motivated jury selection under Batson v. Kentucky, and the Fifth, Sixth and Fourteenth Amendments.**

8 (reverse)

A. Ground one:   Please see pages 3-11 (reverse) for Petitioner's
grounds and supporting facts.

Supporting FACTS (state *briefly* without citing cases or law):

_____

_____

_____

B. Ground two:_____

_____

Supporting FACTS (state *briefly* without citing cases or law):

_____

_____

_____

C. Ground three:_____

_____

Supporting FACTS (state *briefly* without citing cases or law):

_____

_____

_____

D. Ground four:_____

_____

Supporting FACTS (state *briefly* without citing cases or law):

_____

9

Analysis of the notes of voir dire reveal that Petitioner had a valid and meritorious underlying claim of discrimination by the prosecution in the exercise of its peremptory strikes under Batson v. Kentucky, 476 U.S. 79 (1986). First of all, there was a disproportionate removal of black venire members by the prosecution's peremptory strikes, the Commonwealth exercising 13 of its 18 peremptory challenges (72%) against people of color, and only 5 (28%) against whites, despite the fact that people of color comprised only 48% of the venire, and whites, 52%. Whereas the original venire was 59% black, that percentage dropped to 43% in the eventual petit jury (including alternates). See state PCRA Petition, PCRA Exhibits D-H, and supporting memorandum pp. 103-104. Racial discrimination is also indicated from the disparate treatment of similarly situated, particular black and white venire members, including (a) the acceptance of Bruce Jamanow, Danny Farrel and Tina Mason while striking Jimmy Haynes, Paul Melchor and Mabel Harris; (b) the acceptance of Patricia Anick while striking Juanita Martin, (c) the acceptance of Michele Papa while striking Janice Jones, and (d) the acceptance of Joanne Hehn, Michele Papa and Edwin Robinson, while striking Paula Smith, Valerie Lipford, and Magnolia Hicks. Id., pp. 105-111. This is in addition to the other well known indications of possibly systemic racial discrimination in the Philadelphia District Attorney's office, including the 1986 training tape by Jack McMahon, Esquire,[2] the study by David Baldus and George Woodworth analyzing capital jury selection during the years 1981-1999[3] (thus including the year of Petitioner's trial, during which codefendant Simpson was facing the death penalty), and the circumstances documented in previously decided federal cases, including Diggs v. Vaughn, 1991 WL 46319, *1 (E.D.Pa. Mar. 27, 1991) (3 different trials ending 1977); Sistrunk v. Vaughn, 90-CV-1415, Magistrate's Report & Recommendation (E.D.Pa. August 10, 1995 ), p. 6 (Powers, Chief Magistrate Judge)(1981 trial), rev'd 96 F.3d 666 (3d Cir. 1996) (grounds not relevant to the finding of discrimination); Harrison v. Ryan, 909 F.2d 84 (3d Cir. 1990)(1982 trial); Holloway v. Horn, 355 F.3d 707 (3d Cir. 2004) (1986 trial). See PCRA Exhibits I-J, M.

Accordingly, there existed strong evidence on which trial and direct appeal counsel could and should have raised an issue under Batson and violation of due process and equal protection and the impartial jury guarantees of the Fifth, Sixth, and Fourteenth Amendments. Defense counsel's failure to object to the prosecution's use of its peremptory strikes to achieve racial discrimination and to undermine the impartiality of the jury, had no possible strategic purpose and gravely prejudiced Petitioner, Accordingly, counsel rendered ineffective assistance and the state courts' decisions

---

[2]     An August, 1990 lecture given by Assistant District Attorney Bruce Sagel has been suggested as further evidence of continuing racially discriminatory jury selection practices. See PCRA Exhibit K. But see Bond v. Beard, 539 F.3d 256, 274 (3d Cir. 2008) and Commonwealth v. Castro, CP-51-CR-0310323-1997, April 26, 2007 Opinion of Honorable Carolyn Engel Temin (both concluding after testimony that Mr. Sagel did not suggest violating Batson).

[3]     David C. Baldus & George Woodworth, *Evidence of Race Discrimination in the Commonwealth's Use of Peremptory Strikes in Capital Cases – Commonwealth v. Lee Baker (1984)*, PCRA Exhibit M.

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:        N/A

_____

_____

_____

_____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?      Yes ( X  No ( ) See # 11(a)(7) above.  This is a pro-
tective filing under <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 416-417 (2005)

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing: Louis T. Savino, Jr., Esquire, Two Penn Center
Plaza, 15th Street & John F, Kennedy Blvd, Suite 1516, Philadelphia,
PA 19102

(b) At arraignment and plea: Louis T. Savino, Jr., Esquire, as above

_____

(c) At trial: Louis T. Savino, Jr., Esquire, as above

_____

(d) At sentencing: Louis T. Savino, Jr., Esquire, as above

_____

(e) On appeal: Barbara Ann McDermott, Esquire, 1515 Market Street,
Suite 1915, Philadelphia, PA 19128 -- and before her, Edward C.
Meehan, Jr., Esq., 1420 Walnut Street, Suite 911, Phila., PA 19102
(f) In any post-conviction proceeding:
     Undersigned counsel, Carole L. McHugh, Esquire and Barnaby C.
     Wittels, Esquire

10

denying PCRA relief were based on objectively unreasonable findings of fact given the record, and are contrary to, and unreasonable applications of, clearly established federal law.

**(G)     Ground Seven**

> **Petitioner was deprived of due process of law by virtue of the admission of prejudicial and irrelevant evidence concerning his unrelated purchase and alleged later possession of a certain firearm.**

Despite the fact that nothing but unidentifiable bullet fragments were recovered, and no testimony was offered as to the type or caliber firearm which was responsible for killing Haynes (N.T. 12/5/97, p. 107), the Commonwealth was permitted to on put on testimony (1) from Tracena Copper that she purchased a 9 millimeter gun for Petitioner on September 28, 1993, and (2) from Officer Slavin regarding an incident in Cheltenham Township in which this same gun was found on the driver's side floor of a car into which Petitioner had just sat down *on the passenger side*. N.T. 12/11/97, pp. 99-107, 112-113, 119-142; 12/12/97, pp. 126-132; 12/15/97, pp. 3-5. These references to a gun which was never shown to be similar to the one used to kill the decedent, and which Petitioner was never even convicted of "possessing" following the Cheltenham Township incident (N.T. 12/11/97, pp. 137-138), injected highly prejudicial and irrelevant material into Petitioner's trial, in violation of fundamental due process guarantees. Additional prejudice inured to Petitioner because of the unboundaried way in which the testimony was elicited from both Ms. Copper and Officer Slavin, See, e.g., N.T. 12/12/97, pp. 127-128 (Tracena Copper's persistent, apparently calculated "blurt-outs" implying a pattern of dealing in multiple guns for Petitioner); N.T. 12/11/97, pp. 105-107, 125-127 (Officer Slavin's testimony that Petitioner was reaching under his passenger side seat "in an attempt to reach for the gun" – when the gun was in fact under the *driver's seat*); id., p. 140 (prosecutor "misspoke" by indicating, contrary to fact, that defendant had stipulated to ownership of the gun).

**(H)     Ground Eight:**

> **Both trial and direct appeal counsel were ineffective for failing to make and/or properly support arguments against admission of testimony purporting to connect Petitioner to a certain nine millimeter weapon.**

There were wide-ranging discussions among counsel and the court, related to the admission of testimony concerning the aforementioned 9 millimeter firearm, and it was the Superior Court's judgment on direct appeal that counsel had waived and withdrawn Petitioner's objection. See Superior Court Memorandum (PCRA Exhibit B), pp. 3-4; see also N.T. 12/5/97, pp. 95-96, 107-130, 134-137; 12/9/97, pp. 5-8; 12/11/97, pp. 91-93; 12/12/97, pp. 141-166. If true, this constituted clear ineffective assistance. Counsel had a clearly meritorious argument pursuant to both Pennsylvania rules of evidence and due process considerations, for exclusion of all evidence related to this firearm. There was no strategic reason for counsel to have *ever* acquiesced in this inflammatory and largely irrelevant testimony. The prejudice was great, moreover, not only because of the "legitimate"

10 (reverse)

(g)   On appeal from any adverse ruling in a post-conviction proceeding : _____

    undersigned counsel

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?      Yes (x)   No ( )

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?                 Yes ( )   No (x)

    (a)   If so, give name and location of court which imposed sentence to be served in the future:

    _____

    (b)   And give date and length of sentence to be served in the future: _____

    _____

    (c)   Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?   Yes ( )   No ( )

_____

   I declare under penalty of perjury that the foregoing is true and correct.

Executed on  1 - 6 - 10                              *Malik Bowers*
                  Date                          Petitioner's Signature or  MALIK BOWERS
                                              Signature of Petitioner's Representative


Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

Carole L. McHugh, Esquire
410 Old York Road
Jenkintown, PA 19046-2809          11
215-887-5966 (voice)
215-887-4953 (fax)
carole.mchugh@comcast.net (email)

Barnaby C. Wittels, Esquire
LaCheen, Wittels & Greenberg, LLP
1429 Walnut Street, Suite 1301
Philadelphia, PA 19102
215-735-5900 (voice)
215-561-1860 (fax)
barnabyw@aol.com

content of the testimony proposed, but also because of the highly inflammatory and unboundaried way in which the prosecutor permitted its witnesses to testify and attempted, in fact, to testify himself. Trial counsel's performance was, accordingly, constitutionally ineffective.

The same is true of direct appeal counsel. Instead of carefully and cogently presenting the meritorious arguments outlined above on direct appeal, counsel effectively abandoned them. First of all, the Brief for Appellant unaccountably *conceded* the admissibility of Ms. Copper's testimony, which concession was accepted without further inquiry by the Superior Court in its Opinion. See Brief for Appellant (PCRA Exhibit A), p. 12; Superior Court Memorandum (PCRA Exhibit B), p.3. Secondly, counsel neglected to file a reply brief contesting the Commonwealth's assertion that trial counsel waived the entire issue of Officer Slavin's testimony's admissibility, which was arguably wrong. Clearly, this was ineffective assistance. Once having stated a particular issue on appeal, there is never a good strategic issue for briefing an issue in such a way as to virtually insure a negative outcome. Accordingly, Petitioner was clearly prejudiced.

**(I)   Ground Nine:**

**The cumulative prejudice from the foregoing constitutional violations was sufficient to require that Petitioner be granted a new trial.**

When evaluating whether Petitioner has suffered deprivation of his constitutional right to due process, and when evaluating the prejudice to Petitioner from his various ineffectiveness claims, set forth above, it is important to consider, taken together, the effects of all founded violations on the fairness and reliability of Petitioner's trial. See, e.g., Reid v. Vaughn, 109 Fed.Appx. 500 (3d Cir. 2004) (errors that might not amount to due process deprivation when considered alone, may cumulatively produce a trial that is fundamentally unfair).

The state courts' determinations denying relief on all the foregoing grounds are, for the reasons set forth above, based on objectively unreasonable findings of fact and are contrary to, and represent unreasonable applications of, clearly established federal law.

## CERTIFICATE OF SERVICE

I hereby certify that I am this 29th day of January, 2010 serving a copy of the within Petition upon the following person at the address indicated below, by first class mail:

Thomas Dolgenos, Esquire
Chief, Federal Litigation Unit
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

CAROLE L. McHUGH, ESQUIRE

11 (reverse)